UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DR. CHERYL TAYLOR** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Civil Action No. 20-cv-00427 |
| ) | **JURY TRIAL DEMANDED** |
| **DR. RAY L. BELTON, PRESIDENT,** ) | |
| **SOUTHERN UNIVERSITY &** ) | |
| **AGRICULTURAL & MECHANICAL** ) | |
| **COLLEGE; BOARD OF SUPERVISORS OF** ) | District Judge John W. deGravelles |
| **SOUTHERN UNIVERSITY &** ) | |
| **AGRICULTURAL & MECHANICAL** ) | Magistrate Judge Scott D. Johnson |
| **COLLEGE,** ) | |
| ) | |
| **Defendants.** ) | |

**JOINT STATUS REPORT**

NOW INTO COURT, through undersigned counsel, come Plaintiff Dr. Cheryl Taylor and Defendants, Dr. Ray L. Belton and the Board of Supervisors of Southern University & Agricultural & Mechanical College, who respectfully submit this joint status report pursuant to the Court's Order dated July 7, 2020 (R. Doc. 2).

**A.   JURISDICTION**

Plaintiff contends that this Court has subject matter jurisdiction over Plaintiff's federal claims in this action pursuant to 29 U.S.C. § 2617, 42 U.S.C. § 1983, and 28 U.S.C. § 1331, because Plaintiff's claims arise under the laws of the United States. Specifically, Plaintiff brings this action against Defendants under the Family Medical Leave Act, 29 U.S.C. § 2601 et. seq., and Section 1983. Plaintiff further contends that this Court has jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. § 1367.

Defendants contest jurisdiction. Defendants (the Board of Supervisors of Southern University and Southern University's president) are protected by sovereign immunity. Congress declined to abrogate sovereign immunity for claims under the Family Medical Leave Act's "self-care provision" like the plaintiff's claim,[1] and the Eleventh Amendment precludes the exercise of jurisdiction against a state entity based on state law claims.[2] While jurisdiction would theoretically exist against Dr. Belton if sued in his individual capacity under 42 U.S.C. § 1983, it is not clear that the plaintiff has done so, and any § 1983 claim lacks merit in any event.

**B.  BRIEF EXPLANATION OF THE CASE**

**1.  Plaintiff claims:**

Dr. Cheryl Taylor served as the Chair of Graduate Nursing Programs at the College of Nursing and Allied Health Sciences, Southern University Baton Rouge ("SUBR") beginning in 2013. Dr. Taylor is a tenured Associate Professor of Nursing and a respected leader within SUBR as well as the statewide and national nursing community. Between January 6, 2020 and January 31, 2020, Dr. Taylor took approved medical leave under the Family Medical Leave Act (FMLA). Following Dr. Taylor's return on February 3, 2020, Defendants did not restore her to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions as required by the FMLA. Instead, she

---

[1] *E.g.*, *Bryant v. Texas Dep't of Aging and Disability Serv.*, 781 F.3d 764, 769 (5th Cir. 2015) ("[While] Congress has validly abrogated states' sovereign immunity with respect to the FMLA's family-care provision . . . [i]t has not done so with respect to the statute's self-care provision; thus states may still assert an Eleventh Amendment immunity defense against claims based on that provision.").

[2] *E.g.*, *Raj v. La. State Univ.*, 714 F.3d 322, 329 ("[S]overeign immunity bar[s] federal courts from hearing state law claims brought in federal court against state entities.").

suffered unlawful retaliation, including but not limited to an inaccurate and unfair performance evaluation, the removal of her administrative responsibilities as Chair of Graduate Nursing Programs, the effective removal from her administrative position as Chair of Graduate Nursing Programs, a proposed change in her status from the twelve-month Chair of Graduate Nursing Programs to a nine-month faculty position, effective May 31, 2020, and ultimately the formal removal from her position as Chair of Graduate Nursing Programs. Plaintiff asserts that Defendants' actions were in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, et. seq., as well as Dr. Taylor's contractual and due process rights under the 2017-2020 Faculty Handbook for SUBR and federal and state law.

2. **Defendants claim:**

Even if the Court had jurisdiction and the plaintiff had stated a claim, the plaintiff's allegations would be unsupported. The plaintiff was relieved of her administrative duties as Chair of the Graduate Nursing Program and returned to her faculty position for cause. The plaintiff's performance deficiencies were well documented and explained to her months *before* she requested FMLA leave. She was repeatedly notified over a period of months of her deficient performance, which jeopardized the program's re-accreditation. The change in the plaintiff's position was supported by substantial documentation, including numerous emails recording her repeated and unjustified failure to collect data, submit records, and perform other basic requirements of the Chair position. Her faculty peers (and the interim vice-chancellor) agreed that a new Chair was needed. While Dr. Belton—the

3

President-Chancellor—did not make the decision to select a new Chair, the Southern Board of Supervisors did approve the adjustment of the plaintiff's salary to one commensurate with the duties of an associate professor.

**B.    PENDING MOTIONS**

List any pending motion(s), the date filed, and the basis of the motion(s): None pending, though defendants anticipate filing Rule 12(b)(1) and 12(b)(6) motions and, if necessary, a motion for protective order to suspend Rule 26 disclosures and discovery until the Court rules on such motions.

**C.    ISSUES**

List the principal legal issues involved and indicate whether or not any of those issues are in dispute:

1. Whether, upon Dr. Taylor's return from FMLA leave, Defendants failed to restore her to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions as required by the FMLA, 29 U.S.C. § 2614(a)(1) (disputed);

2. Whether Defendants' conduct, including but not limited to an inaccurate and unfair performance evaluation, the removal of her administrative responsibilities as Chair of Graduate Nursing Programs, effective removal from her administrative position as Chair of Graduate Nursing Programs, the proposed change in her status from the twelve-month Chair of Graduate Nursing Programs to a nine-month faculty position, effective May 31, 2020, and ultimately the removal of Dr. Taylor from her position as Chair of Graduate Nursing Programs, constitutes unlawful retaliation in violation of her rights under the FMLA. 29 U.S.C. § 2615(a)

(disputed);

3. Whether Defendants' actions violated Dr. Taylor's due process rights under the Fourteenth Amendment of the United States Constitution (disputed);

4. Whether Defendants' actions violated Dr. Taylor's due process rights under Article 1, § 2 of the Louisiana Constitution (disputed).

5. Whether the Court has jurisdiction over the plaintiff's claims (disputed);

6. Whether the plaintiff's FMLA and state law claims are barred by sovereign immunity (disputed);

7. Whether the plaintiff has stated a claim upon which relief can be granted (disputed);

8. Whether the Board of Supervisors and/or Dr. Belton are "persons" for the purposes of the plaintiff's § 1983 claim (disputed);

9. Whether qualified immunity bars the § 1983 claim against Dr. Belton (disputed); and

10. Whether Defendants' alleged reasons for taking the actions against Dr. Taylor were pretextual (disputed).

**D. DAMAGES**

Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

1. **Plaintiff's calculation of damages:** In this litigation, Plaintiff seeks to recover monetary damages in an amount to be proven at trial including lost wages, lost retirement benefits, and loss of career opportunities; compensatory damages, including but not limited to damages for emotional distress; and liquidated and

punitive damages. Plaintiff also seeks an award of reasonable attorneys' fees and costs incurred in bringing this action, in an amount to be determined after trial, as well as interest on her monetary damages, to be calculated at the prevailing rate at the time of judgment. In addition, Plaintiff seeks equitable relief, including reinstatement as Chair of Graduate Nursing Programs, or in the alternative, front pay and benefits. Plaintiff reserves the right to revise these damages during the course of this litigation.

2. **Defendants' calculation of offset and/or plaintiff's damages:**

Even assuming the issue of damages is reached, the plaintiff's salary was not changed until several months after her May 2020 change to a faculty position. In any event, the plaintiff's term as Chair would have come to an end in May 2021, but for her removal based on unsatisfactory performance. Finally, the FMLA does not provide for emotional-distress damages in a case like this one.

3. Counterclaimant/cross claimant/third party's calculation of damages: N/A.

E. **SERVICE:**

Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or venue: None. Defendants' responsive pleadings are due no later than October 30, 2020.

F. **DISCOVERY**

1. **Initial Disclosures:**

A.  Have the initial disclosures required under FRCP 26(a)(1) been completed? [ ] YES    [X] NO

In accordance with Local Rule 26(b), the parties shall provide their initial disclosures to the opposing party no later than 7 days before the date of the

scheduling conference, unless a party objects to initial disclosures during the FRCP 26(f) conference and states the objection below.

B.      Do any parties object to initial disclosures?

[x ] YES     [ ] NO

For any party who answered *yes*, please explain your reasons for objecting.

**Defendants' position:** The defendants object to Rule 26 disclosures and to discovery generally until the Court determines that it has subject matter jurisdiction over this case. *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72 (1988). It is "a recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters." *Id.* at 78-80. Proceeding forward against the arm of a state before the threshold jurisdictional determination is made would be inconsistent with the Eleventh Amendment.

2. Briefly describe any discovery that has been completed or is in progress: By plaintiff(s): None.

   By defendant(s): None.

3. Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (For example: are there any confidential business records or medical records that will be sought? Will information that is otherwise privileged be at issue?)

   If the case should proceed forward and the plaintiff's medical records are ultimately sought in discovery, the parties agree that a reasonable protective order may become necessary. The parties will alert the Court in such event.

The defendants intend to file a Rule 12(b)(1) motion asserting sovereign immunity and contesting the Court's subject matter jurisdiction. As a result, defendants will also file (if needed) a motion for protective order requesting that all discovery be stayed unless and until the jurisdictional issues are resolved.[3]

**4.  Discovery from experts:**

Identify the subject matter(s) as to which expert testimony will be offered:

**By plaintiff(s):** None anticipated at this time. Plaintiff reserves the right to disclose any experts in compliance with the scheduling order entered by the Court.

**By defendant(s):** No experts are expected at this time. The defendants reserve their right to identify expert testimony that might become necessary in accord with the Court's orders.

**G.  PROPOSED SCHEDULING ORDER**

1. If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline:

    **Plaintiff:** N/A. The plaintiff proposes that initial disclosures be exchanged on September 24, 2020.

    **Defendants:** The defendants propose that disclosures (and all scheduling deadlines) be held in abeyance until the Court determines that it has subject matter jurisdiction. More generally, the defendants propose that the deadlines

---

[3] *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 108 (1988). The Supreme Court explained that it is "a recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters." *Id.* at 78-80.

       below commence only in the event the Court affirms its jurisdiction. For example, the first such deadline would be 60 days after the district court's ruling on jurisdiction. With jurisdiction in doubt, the defendants maintain that setting firm deadlines is premature and could require them to participate in litigation even though the Eleventh Amendment may preclude their being sued in federal court for some or all of the plaintiff's claims.

2. Recommended deadlines to join other parties or to amend the pleadings:

   **Plaintiff: November 13, 2020**

   **Defendants:** Defendants propose holding scheduling deadlines in abeyance unless and until the threshold jurisdictional issues are ruled upon.

3. Filing all discovery motions and completing all discovery except experts:

   **Plaintiff: June 11, 2021**

   **Defendants**: Defendants propose holding scheduling deadlines in abeyance unless and until the threshold jurisdictional issues are ruled upon.

4. Disclosure of identities and resumés of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

   **Plaintiff proposes:**

   **Plaintiff's disclosures due: June 18, 2021**.

   **Defendants' disclosures due: July 16, 2021**.

   **Defendants propose:**

   Defendants propose holding scheduling deadlines in abeyance unless and until the threshold jurisdictional issues are ruled upon.

5.  Exchange of expert reports:

    **Plaintiff proposes:**

    **Plaintiff's expert report due: June 18, 2021**.

    **Defendants' expert report due: July 16, 2021**.

    **Defendants propose:**

    Defendants propose holding scheduling deadlines in abeyance unless and until the threshold jurisdictional issues are ruled upon.

6.  Completion of discovery from experts:

    **Plaintiff: July 30, 2021**.

    **Defendants:** Defendants propose holding scheduling deadlines in abeyance unless and until the threshold jurisdictional issues are ruled upon.

7.  Filing dispositive motions and Daubert motions:

    **Plaintiff: July 30, 2021**.

    **Defendants**: Defendants propose holding scheduling deadlines in abeyance unless and until the threshold jurisdictional issues are ruled upon.

8.  All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters. The parties should not provide any proposed dates for these remaining deadlines.

        a.        Deadline to file pre-trial order[4] (approximately 16 weeks after dispositive motion deadline).

        b.        Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

        c.        Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

        d.        Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

        e.        Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

        f.        Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

**H.    TRIAL**

1. Has a demand for trial by jury been made?

   [X] YES    [ ] NO

2. Estimate the number of days that trial will require: 3 days.

**I.    OTHER MATTERS**

Are there any specific problems the parties wish to address at the scheduling conference?

---

[4] Prior to the filing of the pretrial order, the parties will exchange or make available for inspection all exhibits which the parties will or may introduce at trial.

11

[x] YES  [] NO

    i.    If the answer is *yes*, please explain:

        Defendants believe that it may be beneficial to discuss a procedure to address jurisdiction and qualified immunity (assuming that Dr. Belton has even been sued in his individual capacity) before the parties expend significant resources.

    ii.    If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.**

[ ] YES  [x] NO

**J.  SETTLEMENT**

1. Please set forth what efforts, if any, the parties have made to settle this case to date.

   To date, the parties have had very preliminary discussions about potential amicable resolution.

2. Do the parties wish to have a settlement conference:

   [X] YES     [ ] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be most beneficial?

Plaintiff believes that a settlement conference in the near term would be most beneficial, with an additional settlement conference at a later date if needed.

Defendants believe that the threshold question of jurisdiction must be resolved first

before a settlement conference would be useful.

K.  **CONSENT TO JURISDICTION BEFORE A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge. Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this

court: [ ] YES    [X] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresented parties should sign the <u>attached form</u> to indicate your consent.**

Report dated: September 17, 2020.

                    Respectfully Submitted,

                    */s/ Kerry A. Murphy*
                    Kerry A. Murphy (La. Bar No. 31382)
                        (lead attorney)
                    Catherine E. Lasky (La. Bar No. 28652)
                    **LASKY MURPHY LLC**
                    715 Girod Street, Suite 250
                    New Orleans, LA 70130
                    Telephone: (504) 603-1500
                    Facsimile: (504) 603-1503
                    kmurphy@laskymurphy.com
                    klasky@laskymurphy.com
                    ***Attorneys for Plaintiff***

                    and

                    */s/ Thomas M. Flanagan*
                    Thomas M. Flanagan (#19569)
                    Camille E. Gauthier (#34558)
                    Brandon C. Briscoe (#29542)
                    FLANAGAN PARTNERS LLP
                    201 St. Charles Avenue, Suite 3300
                    New Orleans, Louisiana 70170
                    Telephone: (504) 569-0235
                    tflanagan@flanaganpartners.com
                    cgauthier@flanaganpartners.com
                    bbriscoe@flanaganpartners.com

                    Attorneys for Board of Supervisors of Southern University and Agricultural & Mechanical College and Dr. Ray L. Belton, President of Southern University and Agricultural & Mechanical College.